## Case No. 11,547.

### RAMSEY v. JAILER OF WARREN COUNTY.

[2 Flip. 451.] [1]

District Court, D. Kentucky. May 10, 1879.

HABEAS CORPUS—ARREST OF FEDERAL OFFICER BY STATE OFFICERS—JURISDICTION—NOTICE TO THE STATE.

1. Where a federal officer is arrested by the state authorities, on petition alleging that he is held in custody by the latter for an act done under authority of the United States, this court has no right to refuse the writ of habeas corpus, or to refuse to discharge him, if in the judgment of the court he merits a discharge.

[Cited in Re Neagle, 39 Fed. 850; Id., 135 U. S. 74, 10 Sup. Ct. 672.]

2. The court having jurisdiction, its decision is binding on the state court and is beyond review, in the same manner and to the same extent as the decision of a state court, having jurisdiction, is binding upon the federal court.

3. In cases of this kind, according to the practice which prevails in the district of Kentucky,

1 [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

notice is required to be given to those who represent the commonwealth, but this is by no means essential; the commonwealth not being a party.

The prisoner [F. M. Ramsey], while in discharge of his duty as deputy United States marshal, killed one Joseph Lightfoot, a citizen of Kentucky. For that he was arrested and held by the state officers. The other facts appear in the statements of counsel and in the opinion of the court.

G. C. Wharton, U. S. Dist. Atty., moved that the prisoner, before the court on a writ of habeas corpus, be discharged from the custody of the jailer of Warren county. He said that Ramsey had twice before been arrested for the same offense on writs from Warren county, and that he had been twice discharged from custody upon the ground, that what he did and what was alleged against him as a crime, was done in pursuance of a law of the United States and an order of a court thereof. He claimed that it was the right of the prisoner to have the judgment enforced.

T. E. Moss, Atty. Gen. of Kentucky, was present, and moved that the prisoner be remanded to the state court for trial. He asked that the case be heard anew with all the evidence. He said that the able counsel present on the former hearing was not an authorized officer of the state.

BALLARD, District Judge. When the writ was first issued in this case, according to the practice which has prevailed here, notice was required to be given to those who represented the commonwealth, and counsel did appear to represent the commonwealth. I did not know whether the attorney present was authorized to act for the commonwealth, but I know that counsel was here representing the commonwealth in the matter; that the case was fully heard, and that testimony was adduced on both sides; witnesses were summoned on behalf of the commonwealth, and they were heard, and the prisoner was discharged; it being held by the court that what he did was done in pursuance of a law of the United States, and that he was justified in the act which he did.

Now, whether the decision of the court was right or wrong on the facts, the court has jurisdiction by the very terms of the act of congress to issue the writ of habeas corpus. This court has jurisdiction if the prisoner is in the custody of the state, and he claims that he is in custody for an act done in pursuance of a law of the United States or any order of a court thereof. The case here is: The prisoner was discharged after a full hearing before this court. He was arrested again on a bench warrant, a writ of habeas corpus issued, and he was brought before this court again, and it being conceded that he was arrested on a bench warrant for the same matter, without a hearing the court discharged the prisoner. And now a third time the prisoner is here on a writ of habeas corpus. He was ordered into custody by the state court, not by a bench warrant strictly; the prisoner being in court, was ordered into custody. It is now conceded that this is for the same matter for which this party was hitherto discharged. I again order him to be discharged. Now I repeat that there might be some question as to whether the decision of this court upon the facts of the case was right—that is, another mind might arrive at another conclusion, but I do not think it is likely. I do not think the state judge, for whom I have much respect, would have reached a different conclusion if he had heard the evidence which was before me. It was pretty well shown in the case that the party who was killed was a very violent man, extraordinarily violent; that he had declared that he would not submit to an arrest; that it would take more than any one officer to arrest him; that he was engaged at the time in an occupation connected with the making of sorghum sirup, with his pistol belted around his person, and that he had reason to know, and that all the circumstances pointed to the fact that he did know that the officer came there to arrest him and had in his possession the warrant for his arrest. He gave him no opportunity, it is true, to read any warrant to him, for he acted too promptly, and his conduct was such as to indicate resistance to the officer in the arrest, and not only resistance, but such resistance as to imperil the life of the officer and make it necessary for him to act as promptly as he did. Now I repeat these facts simply that the attorney general, who is now present, and who was not present at the time, may understand not only the ground, but that there was at least some justification for the decision rendered. But I say that whether that decision was right or wrong, I do not think it can be denied that the court had jurisdiction, and having jurisdiction its decision should be respected. The state court is as much bound by this decision as I would be bound by a decision in which the state court had jurisdiction. I have no jurisdiction to review the judgment of a state court, nor the state court to review a judgment of this court. This case is somewhat similar to the case before Judge Grier, Ex parte Jenkins [Case No. 7,259]. There a warrant in the first instance regularly issued by a justice of the peace of Pennsylvania, charging a marshal of the United States with assault and battery, with intent to kill a certain negro. Judge Grier issued a writ of habeas corpus under the very act of congress, under which this court has exercised jurisdiction in this case. Afterwards the negro brought his civil suit against the marshal and issued out a warrant of arrest, and he was arrested, and District Judge Kane, acting under au-

thority of Judge Grier's decision, discharged him. He was arrested afterwards for assault and battery, brought before Kane, and again discharged. In this case the man was first charged with malicious shooting. He was discharged by this court. Secondly, he was arrested on a charge of murder, after indictment found, and now he is arrested substantially on a bench warrant again, for identically the same offense, and, therefore, it is a much stronger case than the above case. Yet in this case the state court has, in violation of the order of this court, proceeded to commit the man. I do not know that the state court has been properly informed of the action of this court, but if so, the arrest of this man is in disregard of its orders. No doubt the man was in lawful custody of the state court, but the act of congress was intended to relieve the officers of the United States from that lawful custody when put there for an act done under act of congress, or in pursuance of any law of the United States. I think, although this question has not been very directly passed upon by the supreme court of the United States, it is plainly touched upon in the case of Coleman v. Tennessee, 97 U. S. 509. There a party, a soldier of the United States during the war, killed a citizen of Tennessee, and the charge was murder. The judge of the United States court issued his writ of habeas corpus and discharged him. He was subsequently tried in the state court, and among the defenses made was the defense that he had been discharged by the United States court; and there was another defense, that for anything done by him during the war he was not amenable to the state of Tennessee. Now, the case in the supreme court went off chiefly on the latter point, but they also stated substantially that the judgment of the United States court discharging the prisoner, was also a defense.

Pending the appeal to that court (the supreme court of Tennessee,) the defendant was brought before the circuit court of the United States for the Eastern district of Tennessee on a writ of habeas corpus, upon a petition stating that he was unlawfully restrained of his liberty, and imprisoned by the sheriff of Knox county upon the charge of murder, for which he had been indicted, tried and convicted, as already mentioned; and setting forth his previous conviction for the same offense by a court-martial, organized under the laws of the United States, substantially as in the plea to the indictment. The sheriff made a return to the writ that he held the defendant upon a capias from the criminal court for the offense of murder, and also upon an indictment for assisting a prisoner in making his escape from the jail.

The circuit court being of opinion that so far as the prisoner was held under the charge of murder, he was held in contravention of the constitution and laws of the

United States, ordered his release from custody upon that charge. His counsel soon afterwards presented a copy of this order to the supreme court of Tennessee, and moved that he be discharged. That court took the motion under advisement, and disposed of it, together with the appeal from the criminal court, holding in a carefully prepared opinion that the act of congress of February 5, 1867 [14 Stat. 385], under which the writ of habeas corpus was issued, did not confer upon the federal court, or upon any of its judges, authority to interfere with the state courts in the exercise of jurisdiction over offenses against the laws of the state, especially when, as in this case, the question raised by the pleadings was one which would enable the accused to have a revision of their action by the supreme court of the United States; and, therefore, that the order of the circuit court in directing the discharge of the defendant was a nullity. And upon the question of the conviction by the court-martial, it held that the conviction constituted no bar to the indictment in the state court for the same offense, on the ground that the crime of murder, committed by the defendant whilst a soldier in the military service, was not less an offense against the laws of the state, and punishable by its tribunals, because it was punishable by a court-martial under the laws of the United States.

Now I say that this case may well have gone off on the ground that this man being a soldier of the army of the United States was not amenable to the laws of Tennessee. This was the first ground, but they touched on the ground of the court-martial—for they say that if he was guilty of murder and amenable to the laws of Tennessee, he might be also amenable to the United States for the same offense, and that a conviction in the court-martial for that identical offense would be no defense in the state court, if the state court had jurisdiction of the offense. They, therefore, ordered the discharge of the prisoner from the custody of the state officer.

They say: "This conclusion renders it unnecessary to consider the question presented as to the effect to be given to the order of the circuit court of the United States directing the discharge of the defendant. It is sufficient to observe that by the act of congress, of February 5, 1867, the several courts of the United States and its judges, in their respective jurisdictions, have, in addition to the authority previously conferred, power to grant writs of habeas corpus in all cases upon petition of any person restrained of his liberty in violation of the constitution or any law of the United States, and if it appear, on the hearing had upon the return of the writ, that the petitioner is thus restrained, he must be forthwith discharged and set at liberty."

Now that is as much as the court could

say upon a question which it was not necessary to decide. They discharged the prisoner upon the first point. Unless they had regarded the other question, as without difficulty, they would have omitted to say anything about it at all.

Now, it is something of an anomaly arising out of our dual government that the officers of one government may be investigated in another sovereignty than that to which they are officially responsible. The marshal of the United States is not to be considered exempt from the operation of the laws of the state because he is a marshal, and yet it would seem absolutely essential to the vindication of the authority of the United States that that government should have some power at least to protect its officers when they commit what are apparent offenses in the discharge of their duty. A great many anomalous cases arise and must arise, and one should exercise forbearance—one government to the other. For example, an officer of this court or an officer of the state has a prisoner in his custody; say the state officer has a prisoner under authority of a warrant issued from a state court, and is bearing him to prison, and an officer of the United States has in his hands a warrant for the arrest of the state officer. Now, if he proceeds at once to execute that warrant, the prisoner goes at large, as he has no power to take him, and thus the enforcement of the laws of the United States might defeat the enforcement of the laws of the state. You might reverse the case exactly, and the enforcement of the state laws might in a similar manner defeat the enforcement of the laws of the United States. That ought not to be done. I am of the opinion that the state officer has no right to arrest the marshal who has a prisoner in his custody, nor the marshal a right to arrest the state officer in charge of a prisoner. They should exercise forbearance.

Nothing is more improper than that there should not be harmony between the federal and state courts, and I have certainly at all times manifested my respect for the decisions of the state courts, because I have respect for them, and no citizen of the state desires more than I to see the criminal laws of the state properly enforced; but when a federal officer comes before me saying that he is in custody for an act done under authority of the United States, I have no right to refuse the writ of habeas corpus, or to refuse to discharge him, if in my judgment he merits a discharge; and I think that, having jurisdiction, the decision of this court is binding upon the state courts, and beyond review, just as binding as any decision of a state court having jurisdiction is upon me.

Attorney General Moss then addressed the court, mainly upon two points: First, that the commonwealth of Kentucky had not been represented in the previous discussions of the question; and, second, that the prisoner was not held upon the same charge, not even upon a warrant, but upon an order of the court, in which the prisoner was then present. He asked a rehearing of the case, and leave to be allowed to produce testimony for the commonwealth.

THE COURT observed that the proceeding was against a jailer, and that the commonwealth was not a party, and although it was customary to notify the commonwealth, such notice was by no means essential; that the county attorney had represented the jailer or sheriff; and that upon the matter of the order of court by which the prisoner was committed, it was not material whether it was a mere order or not, so that the commitment into custody was for the same matter. The prisoner was, therefore, ordered to be discharged.